UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| **v.** : | |
| : | **Crim No. 21-cr-13 (RJL)** |
| **LEON WINDER,** : | |
| : | |
| **Defendant.** : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons herein, the United States requests that the Court sentence the defendant to a period of 63 months of incarceration; the government further requests that the Court impose a period of 3 years of supervised release. The government is also seeking the forfeiture of the black PMF 9mm Ghost Gun with 1 round in the chamber, and 24 rounds in a 24-round extended magazine. The government is not requesting any fines or restitution in this case, other than required court costs. In support of this sentence, the government states the following.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 12, 2021, a federal grand jury for the District of Colombia returned a two-count Indictment charging Leon Winder with Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 USC § 922(g)(1) and Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of D.C. Code § 22-4503(a)(1). The Indictment provided notice to the defendant that the Government intended to seek forfeiture as a part of the sentence. Rule 32.2(a) of the Fed. Rules of Crim Proc. Specifically, the

1

defendant shall forfeit the privately made firearm (PMF) consisting of a Polymer 80 receiver and slide with no known manufacturer and 9mm ammunition seized during the defendant's arrest.

On December 8, 2021, Defendant Winder pleaded guilty to Count 1 of the Indictment charging him with Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). The plea was based on the following facts:[1]

"On Friday, December 11, 2020, at approximately 4:30 p.m., I was walking in the 5400 block of D Street Southeast in Washington, D.C. when I saw officers of the Metropolitan Police Department (MPD) drive onto the block. Initially, I observed one vehicle with MPD officers. I turned away as the vehicle passed me, so my back was to that vehicle because I had a 9 millimeter handgun in the front of my waistband, and I was trying to make sure the officers did not see the gun. As I was trying to hide the gun from the officers in the first vehicle, I saw a second vehicle with officers driving toward me. I tried to run between a couple of houses to get away from the officers, but I slipped and fell in the front yard at 5414 D Street Southeast. Officers immediately approached me and recovered the gun which became partially visible in my waistband when I fell. I was handcuffed and placed under arrest.

The firearm that was recovered was a black 9 millimeter handgun with no model or serial number. When it was recovered, it was loaded with one (1) round in the chamber and twenty-four (24) rounds in a twenty-four (24) round high-capacity magazine.

At the time I knew that I had a prior felony convictions for Attempt Robbery While Armed with a Imitation Firearm (Superior Court Case Number 2014 CF3 3685), and for Carrying a Pistol Without a License (Superior Court Case Number 2012 CF2 8104), which were crimes punishable

---

[1] The below recitation is from the Statement of Facts filed on December 8, 2021. *See*, ECF No. 25.

by more than one year. I also acknowledge that no ammunition is manufactured in the District of Columbia, so I know the ammunition had to travel in interstate commerce into the District of Columbia."

## DISCUSSION AND RECOMMENDATION

### I. Generally Applicable Legal Principles

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). See United States v. Gall, 128 S. Ct. 586, 596 (2007). The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> 
> (2) the need for the sentence imposed –
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> 
> (3) the kinds of sentences available;
> 
> (4) the kinds of sentence and the sentencing range established for –
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>         (i) issued by the Sentencing Commission ...; and
>         (ii) that, . . . are in effect on the date the defendant is sentenced; ...
> 
> (5) any pertinent policy statement –
>     (A) issued by the Sentencing Commission ... and
>     (B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## II.     Defendant's Sentencing Guidelines Calculation

### A.     Total Offense Level

The base offense level for a violation of 18 U.S.C. § 922(g)(1), is governed by U.S.S.G. § 2K2.1. There is dispute between the parties as to which subsection applies and therefore what the applicable offense level should be. The government argues that U.S.S.G. § 2K2.1(a)(3) applies while the defense believes that U.S.S.G. § 2K2.1(a)(4) correlates to the appropriate offense level. The government's position turns on whether Defendant Winder's conviction for Conspiracy to Commit Robbery Circuit Court, Prince George's Co., MD (CT140690B) is a "crime of violence" under U.S.S.G. § 2K2.1. Because Maryland robbery is a crime of violence, and under the relevant Guidelines provisions a conspiracy to commit a crime of violence is also a crime of violence, the defendant's prior conviction is a crime of violence, and the proper offense level is U.S.S.G. § 2K2.1(a)(4) as outlined below.

Under Application Note 1 of § 2K2.1, "'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." Section 4B1.2(a), in turn, defines a crime of violence as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that satisfies either the "elements clause" of § 4B1.2(a)(1) or the "enumerated clause" of § 4B1.2(a)(2). The "elements clause" covers any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." The "enumerated clause" captures an offense that "is" one of several specified offenses, including "robbery." Finally, Application Note 1 of the Commentary to § 4B1.2

4

instructs that "'Crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."

### 1. Maryland Robbery Is a Crime of Violence

Maryland robbery is a crime of violence for two separate and independent reasons.

First, the offense of robbery in Maryland requires an element of force, and thus satisfies the elements clause. The Maryland Pattern Jury Instructions offer three versions of robbery, but each contains the element that the defendant either took the property or obtained the service "by force or threat of force." See, Maryland Criminal Pattern Jury Instructions 4:28 Robbery. As the Fourth Circuit noted in United States v. Bell, 901 F.3d 455 (4th Cir. 2018), "Robbery in Maryland is a common law crime defined as 'the felonious taking and carrying away of the personal property of another from his person by the use of violence or by putting in fear.'" Bell, 901 F.3d at 469 (quoting Williams v. State, 302 Md. 787, 490 A.2d 1277, 1280 (1985) (emphasis added)).[2] As the Court of Appeals of Maryland detailed further in Spencer v. State, 30 A.3d 891, 895 (Md. 2011),

> Robbery in Maryland is governed by a common law standard. Maryland Code (2002, 2011 Supp.), § 3–401(e) of the Criminal Law Article, provides that "'[r]obbery' retains its judicially determined meaning." From its earliest days in Maryland law, fear has been a central component in distinguishing the crime of larceny or theft from robbery. A 1724 English treatise, quoted by Chief Judge Murphy in West v. State, 312 Md. 197, 203, 539 A.2d 231, 233 (1988), stated: "Larceny from the Person of a Man either puts him in Fear, and then it is called

---

[2] The Fourth Circuit in Bell discussed the elements of Maryland armed robbery at length and rejected an argument by the appellant that a robbery could be effected without threatening force against a person (specifically, by directing force solely against property). In doing so, the Fourth Circuit underscored the elements or robbery and pointed to a number of cases addressing those elements. See Bell, 901 F.3d at 472, citing West v. State, 539 A.2d 231, 234 (Md. 1988) (explaining that robbery requires "actual" or "constructive" violence; that actual violence "implies personal violence"; and that constructive violence is that which "intimidat[es] or plac[es] the victim in fear" (emphasis added) (citation omitted)); Spencer v. State, 30 A.3d 891, 898 (Md. 2011) ("[W]hen considering whether there has been a threat of force or intimidation," a court must "consider whether an ordinary, reasonable person under the circumstances would have been in fear of bodily harm" (emphasis added)); Snowden v. State, 583 A.2d 1056, 1059 (Md. 1991) ("Robbery is a ... larceny from the person accomplished by either an assault (putting in fear) or a battery (violence)").

>Robbery; or does not put him in Fear, and then it is called barely, Larceny from the Person." William Hawkins, Treatise of the Pleas of the Crown.

Spencer, 30 A.3d at 895. The Court of Appeals in Spencer went on to cite Coles v. State, 821 A.2d 389 (Md. 2003), for the proposition that "[t]he hallmark of robbery, which distinguishes it from theft, is the presence of force or threat of force, the latter of which also is referred to as intimidation." Id. (quoting Coles, 821 A.2d at 395 (internal quotations omitted)). Thus, the distinction between Robbery and Larceny in Maryland provides a clear dividing line between offenses which involve an element of force and offenses which do not.

The D.C. Circuit has held that Maryland robbery with a dangerous weapon qualifies under the elements clause. See United States v. Redrick, 841 F.3d 478, 484 (D.C. Cir. 2016). In Redrick, the D.C. Circuit assumed that standard Maryland robbery—that is, robbery without a dangerous weapon—would not be a "crime of violence." The Redrick Court pointed to the government's concession in a Fourth Circuit case that Maryland common law robbery is not a violent felony. See Redrick, 841 F.3d at 482. After Redrick, however, the Fourth Circuit held that Maryland robbery does satisfy the elements clause and qualifies as a violent felony. See United States v. Johnson, 945 F.3d 174, 181 (4th Cir. 2019).[3] In Johnson, the Fourth Circuit held that a conviction for robbery by force in Maryland requires proof that the defendant used either force that overcame the victim's resistance or force capable of causing personal injury. Johnson, 945 F.3d at 180. Indeed, the Maryland offense of robbery requires more than nominal contact, as evidenced by the

---

[3] The government recognizes that a Fourth Circuit panel recently certified a question to the Court of Appeals of Maryland about whether Maryland robbery may be committed "by means of threatening force against property or threatening to accuse the victim of having committed sodomy," suggesting that an affirmative answer may prevent Maryland robbery from qualifying as a crime of violence. See United States v. Dickson, No. 19-4226, 2021 WL 3630032 (4th Cir. Aug. 17, 2021). At least at this time, it does not appear that the Maryland court as answered that question, and it also is not clear whether the Dickson panel would have authority, upon receiving an affirmative answer, to overrule the panel decision in Johnson.

Maryland robbery convictions that have been overturned where the only force used was that used to take the property that was sought. Id. (citing West v. Maryland, 539 A.2d 231, 235 (Md. 1988) and Cooper v. State, 265 A.2d 569, 572 (Md. 1970)). As such, in line with the Supreme Court in Stokeling v. United States, 139 S. Ct. 554 (2019),[4] "Maryland robbery committed by force that overcomes a victim's resistance constitutes a violent felony." Johnson, 945 F.3d at 181. As mentioned in Johnson, the Court of Appeals of Maryland in West v. State, 539 A.2d 231 (Md. 1988), discussed the distinction between larceny and robbery in Maryland and explained that West, 539 A.2d at 234 (quoting Cooper, 265 A.2d 571) illustrated that the offense of robbery requires more than nominal contact. The caselaw makes clear that under Maryland robbery law, a mere snatching does not constitute a robbery; instead, it requires a level of force to overcome a victim's resistance and therefore, it satisfies the elements clause of § 4B1.2(a)(1).

Second, Maryland robbery also qualifies as a crime of violence under the enumerated clause of U.S.S.G. § 4B1.2(a)(2) because its elements match those of the generic "robbery" crime. To determine whether a crime fits one that is enumerated, courts must "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—i.e., the offense as commonly understood." Descamps v. United States, 570 U.S. 254, 257 (2013). A crime is an enumerated offense where "its elements are the same as, or narrower than, those of the generic offense." Mathis v. United States, 136 S. Ct. 2243, 2247 (2016). To hold that a crime is outside the scope of a generic offense's definition, a court must find "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls

---

[4] In Stokeling v. United States, 139 S. Ct. 554 (2019), the Supreme Court held that the Florida robbery statute—with elements that track the elements of robbery in Maryland—satisfied the elements clause, noting that the Florida Supreme Court's rulings indicated the statute required "resistance by the victim that is overcome by the physical force of the offender[]" and that "[m]ere snatching of property from another will not suffice." 139 S. Ct. at 554-55 (citation omitted).

outside the generic definition of a crime." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). "[G]eneric robbery is defined as the 'misappropriation of property under circumstances involving [immediate] danger to the person,'" and "the 'immediate danger' element in that definition is categorically satisfied by the taking of property 'from a person or a person's presence by means of force or putting in fear.'" United States v. Gattis, 877 F.3d 150, 156-57 (4th Cir. 2017); see also, e.g., United States v. Lockley, 632 F.3d 1238, 1244 (11th Cir. 2011) (quoting United States v. Walker, 595 F.3d 441, 446 (2d Cir. 2010)) (defining generic robbery as "'the taking of property from another person or from the immediate presence of another person by force or intimidation'"). That is, almost word for word, how Maryland law defines robbery: "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear." Coles, 821 A.2d at 394. Maryland robbery thus qualifies as a crime of violence under the enumerated clause as well.

### 2. Conspiracy to Commit a Crime of Violence Is a Crime of Violence

Application Note 1 of the Commentary to § 4B1.2 explains that the term "crime of violence" also "include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." (Emphasis added). The defendant's conviction for conspiracy to commit Maryland robbery thus qualifies under the Guidelines.

The D.C. Circuit's decision in United States v. Winstead, 890 F. 3d 1082 (D.C. Cir. 2018), does not alter this analysis. Winstead interpreted the definition of "controlled substance offense" under § 4B1.2(b), which the Guidelines define as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export,

8

distribute, or dispense." <u>Winstead</u> held that this definition did not include attempted distribution of a controlled substance, and Application Note 1's effort to expand the definition to include inchoate offenses (like attempt) was thus invalid: "Section 4B1.2(b) presents a very detailed 'definition' of controlled substance offense that clearly excludes inchoate offenses. Expressio unius est exclusio alterius." 890 F.3d at 1091; <u>see also</u> <u>id.</u> at 1090-91 (explaining that Guidelines commentary like an application note "should 'be treated as an agency's interpretation of its own legislative rule,'" meaning it is "authoritative" unless, among other things, it "is inconsistent with, or a plainly erroneous reading of, that guideline"). But <u>Winstead</u> explicitly noted that its decision was limited to a "controlled substance offense," and it was not resolving whether the same analysis would apply to a "crime of violence": "To be clear, our holding does not invalidate Application Note 1's guidance with respect to whether a 'crime of violence' includes the offenses in that Note. We address only the scope of the definition of 'controlled substance offense.'" <u>Id.</u> at 1091 n.12.

<u>Winstead</u>'s reasoning does not work for the definition of a "crime of violence." To begin, while Winstead saw a "clear[ ]" and "detailed" definition of a "controlled substance offense" in § 4B1.2(b), the definition of a "crime of violence" under the categorical approach is notoriously difficult and unclear.[5] This sort of difficult and ambiguous definition in the text of the Guidelines

---

[5] A recent Third Circuit dissent samples some of the choice criticisms:
> As far as I can tell, no one has ever described the categorical approach as clear, obvious, simple, or straightforward. To the contrary, one Supreme Court Justice explained that the categorical approach requires "sentencing judges to delve into pointless abstract questions," as opposed to "real-world" considerations. Another Justice recognized that the approach produces "arbitrary and inequitable results." A third Justice described it as an "absurdity," explaining that it "is difficult to apply." Two other Justices expressed concern that the categorical approach "unnecessarily complicate[s] federal sentencing law." And several other Justices joined in the remark that under the categorical approach, "[s]omething has gone badly astray."
> . . . .
> Those assessments are widely shared by judges in our sister circuits. Beyond expressions of disbelief as to the outcomes it generates, they have described the

9

is exactly what Guidelines commentary should fill in.

Indeed, Winstead recognized that the definitions in subsection (a) ("crime of violence") and subsection (b) ("controlled substance offense") were drafted in different ways, with the "crime of violence" definition casting far more broadly and expressly covering some inchoate crimes: "Expressio unius est exclusio alterius. Indeed, that venerable canon applies doubly here: the Commission showed within § 4B1.2 itself that it knows how to include attempted offenses when it intends to do so. See USSG § 4B1.2(a)(1) (defining a 'crime of violence' as an offense that 'has as an element the use, attempted use, or threatened use of physical force . . . .')." Id. at 1091. See also United States v. Nasir, 982 F.3d 144 (3d Cir. 2020) (en banc) (reaching same conclusion as Winstead while noting "[t]he [controlled-substance] guideline does not even mention inchoate offenses. That alone indicates it does not include them. The plain-text reading of section 4B1.2(b) is strengthened when contrasted with the definition of 'crime of violence' in the previous subsection. That definition in section 4B1.2(a) does explicitly include inchoate crimes, see U.S.S.G. § 4B1.2(a) ("The term 'crime of violence' means any offense ... that — (1) has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" (emphasis added)), which further suggests that the omission of inchoate crimes from the very next subsection was intentional.").

Numerous courts outside of this Circuit have likewise recognized the applicability of Application Note 1 to the definition of a "crime of violence," and we do not believe any circuits

---

        approach as "complicated," an "absurd[ ] exercise," a "judicial charade," a "protracted ruse" for paradoxical findings, a "morass" requiring "legal gymnastics," a "long-baffling" undertaking, a "struggle[ ] to understand," and an inquiry that "crush[es] common sense" with "bizarre" effects that lead to judicial "puzzlement."

*United States v. Scott*, 14 F.4th 190, 200-02 (3d Cir. 2021) (Phipps, J., dissenting) (footnotes omitted).

have yet found Application Note 1 to be an unlawful extension of Section 4B1.2(a)(1)'s definition of crime of violence. See, e.g., United States v. Shine, 910 F.3d 1061, 1064 (8th Cir. 2018) ("It makes no difference that Shine's conviction was for attempted first-degree robbery rather than the completed crime.  His attempt was still punishable by more than one year in prison, see Mo. Rev. Stat. §§ 558.011.1(2), 564.011.3(1) (1979), 569.020.2, and the definition of 'crime of violence' includes the 'attempted use ... of physical force,' U.S.S.G. § 4B1.2(a)(1); see also id. § 4B1.2 cmt. n.1 (explaining that a '[c]rime of violence ... include[s] the offense[ ] of ... attempting to commit such [an] offense[ ]')"); United States v. Scharschell, 664 Fed. Appx. 596, 599 (8th Cir. 2016) (applying Application Note 1 to 4B1.2 to conclude that conspiracy to commit a state law crime of violence itself qualifies as a crime of violence under 4B1.2); United States v. Lucius, 737 F. App'x 685, 686 (5th Cir. 2018) ("Moreover, application note 1 to § 4B1.2 specifically states that a crime of violence includes 'the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.' § 4B1.2, comment. (n.1)."); cf. United States v. Barrett, 903 F.3d 166, 178 (2d Cir. 2018) (holding that any conspiracy to commit a categorically violent crime qualifies as a "crime of violence" under Section 924(c), reasoning that conspiracy is viewed as heightening the likelihood that a substantive crime will occur, and therefore any agreement to commit a violent crime increases the likelihood of violence and categorically satisfies the "crime of violence" definition); United States v. Kennedy, 133 F.3d 53, 57-58 (D.C. Cir. 1998) (holding that so long as the "object" of the conspiracy—i.e., its unlawful agreed-upon goal—fits within § 924(c)'s definition of a crime of violence, then the conspiracy crime also qualifies as a crime of violence); United States v. Eshetu, 863 F.3d 946, 952 (D.C. Cir. 2017) (Millett, J., concurring in part and concurring in the judgment) ("Under this court's precedent, by which this panel is bound, in a Hobbs Act conspiracy, we may look to the object of the conspiracy—either robbery or extortion—

11

to determine if the conspiracy itself is a crime of violence.").

Finally, as the Seventh Circuit has explained, Winstead's analysis does not necessarily apply when the § 4B1.2 Application Note 1 issue arises under § 2K2.1, because § 2K2.1 (unlike § 4B1.2) defines a "crime of violence" by reference to the § 4B1.2 Application Note 1: "'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." As the Seventh Circuit reasoned in the parallel situation with a "controlled substance offense":

> One could distinguish Winstead from this case on the ground that the applicable Guideline here is § 2K2.1, not § 4B1.2 itself. Section 2K2.1(a)(4)(A) is drafted differently. The Guideline itself refers only to 'a controlled substance offense' and leaves all definition for its respective application note. As noted, Application Note 1 says that 'controlled substance offense' 'has the meaning given that term in § 4B1.2(b) and application Note 1 of the Commentary to § 4B1.2.' This basis for distinguishing Winstead, offered by the government here, may be a reasonable reading of the different language in the two Guidelines and their Application Notes because Application Note 1 to § 2K2.1 does not conflict with the language of § 2K2.1(a)(4) itself.

United States v. Adams, 934 F.3d 720, 728 (7th Cir. 2019). Although Adams focused on the controlled substance predicate, the same reasoning is true as to the crime of violence provision.

Accordingly, the defendant's prior conviction for Conspiracy to Commit Robbery qualifies as a crime of violence under U.S.S.G. § 2K2.1, and his base offense level for the instant offense should be 22.[6]

### B.  Criminal History Category

The PSR writer calculates the defendant to have a total of 13 criminal history points, placing him in Criminal History Category VI. *See* PSR ¶¶ 25-43. Based on the government's calculations below, the defendant would have a total of 15 criminal history points, again placing

---

[6] The parties agree that whichever guidelines the Court ultimately determines as appropriate that a 3-point reduction is proper in this case. This results in a total offense level of 19 or 17 depending on the Court's determination.

him in Criminal History Category VI.  According to the government, the defendant's prior adult convictions and scoring include:

| Offense Date | Charge/ Court | Sentence | Guideline | Criminal History Points |
|---|---|---|---|---|
| 12/14/15 | Conspiracy to Commit Robbery<br><br>CT140690B<br>P.G. Circuit Court | 2/18/16: 10 years imposed, 5 years suspended, 3 years supervised probation | 4A1.1(a); 4A1.1(d) | 3 |
| 3/1/14 | Attempted Robbery While Armed (Imitation Firearm)<br><br>2014-CF3-003685<br>D.C. Superior Court | 4/9/15:  40 months, supervised release 5 years | 4A1.1(a) | 3 |
| 10/6/14 | Simple Assault Att. PPW(b)<br><br>2014-CF3-017695<br>D.C. Superior Court | 5/5/15: Time served (212 days) | 4A1.1(b) | 2 |
| 7/1/14 | Simple Assault Att. PPW(b)<br><br>2014-CF3-011548<br>D.C. Superior Court | 5/5/15: Time served (308 days) | 4A1.1(b) | 2 |
| 5/10/12 | Carrying a Pistol Without a License<br><br>2012-CF2-008104<br>D.C. Superior Court | 9/7/12:  20 months, 3 years supervised release | 4A1.1(a) | 3 |

Additionally, under the government's calculations, the defendant committed the instant offense while on supervised release and/or probation in 2014 CF3 3685 and CT140690B, which adds two points to the criminal history score calculated above for a total of fifteen (15) points.

13

Although the defense objects to the scoring of two misdemeanor convictions, arguing they should be one point instead of two points based on the length of a "time-served" sentence; even at one point, the defendant still falls into Criminal History Category VI. As such, the Court need not conduct an analysis as to whether the offenses should be given one or two points based on the length of the "time-served" sentences. Such an analysis may require the prior cases sentencing transcript to get a clearer understanding of the length of the sentences but ultimately, under the government's calculations or the PSR, the defendant lands in Criminal History Category VI.

    **C.**    **Sentencing Guideline Range**

With a total offense level of 19 and a Criminal History that falls in Category VI, the guidelines' range for Defendant Winder under the government's calculations in the Plea Agreement is 63-78 months of incarceration. *See* Plea Agreement, ¶ 4(C).[7] The Court may impose a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2); *see* PSR ¶ 90.

## III.    Sentencing Recommendation

As stated above and in the plea agreement, the government agreed to cap its allocution at the low end of the applicable guidelines. The government believes the appropriate guidelines are 63-78 months and asks this Court to sentence the defendant to 63 months incarceration, to be followed by 3 years of supervised release.

    **A.**    **The Nature of the Offense**

The defendant's conduct in this case presented a danger to everyone in and around the 5400 block of D Street Southeast, Washington, D.C. Despite three prior felony convictions, including two robberies involving real or imitation firearms, and being on supervision, Defendant Winder nevertheless armed himself and, upon seeing police tried to elude officers to evade potential arrest

---

[7] The PSR calculates a Total Offense Level of 17 and a Criminal History Category of VI, resulting in a range of 51-63 months. PSR ¶ 84.

but slipped, luckily not creating an accidental discharge that could of injured not only himself but officers and civilians in the area.

It is fortunate no one was hurt; however, rather than stop in response to officers, the defendant instead decided he did not want to risk going to jail. To avoid doing so, he tried to shield himself from law enforcement, and upon seeing a second MPD vehicle, decided to run from officers. The defendant's choice to flee is what led to his fall in a front yard and ultimate arrest but the defendant's brazen efforts to escape while armed could have easily caused grievous injury.

### B. The History and Characteristics of the Defendant

While the defendant accepted responsibility for his actions in this case, his unlawful possession of a firearm is still particularly troubling in light of his criminal history. As detailed above, the defendant comes before this Court in Criminal History Category VI. His prior convictions not only include 3 involving the possession or use of a firearm or imitation firearm—most notably, Attempted Robbery While Armed (imitation firearm) and Conspiracy to Commit Robbery—but also that the defendant was under supervision on both robbery cases at the time of the instant offense. The defendant's record thus demonstrates a pattern of disregard for public safety, as well as the law and the judicial process. His record also indicates he remains undeterred from illegally carrying firearms and continues to pose a danger to the community.

Moreover, the defendant's criminal history score may underrepresent that danger, as it does not take into account his numerous other contacts with the criminal justice system. *See, e.g.,* PSR ¶¶ 25-48. While the government does not rest its allocution on acquitted or dismissed conduct, we nevertheless tender this information as unfortunately illustrating that the defendant's conduct is not an aberration. The government notes that the affidavit for the defendant's CPWL arrest in 2012 illustrates not only that the prior CPWL occurred in front of an elementary school (CW Harris

Elementary) but also occurred 2 blocks from the arrest that brings the defendant before the Court. *See* PSR ¶ 36. Additionally, the defendant's 2015 conviction for Attempt to Commit Robbery While Armed – Imitation Firearm should give the Court pause. In fact, according to the affidavit the firearm located by MPD was a Ruger P89 9x19 which is not an imitation firearm. The defendant was the individual who possessed and brandished the firearm in the street robbery before fleeing into a vehicle with a co-conspirator. This offense occurred less than a mile from where the defendant was arrested in this case. *See* PSR ¶ 37. Finally, in 2015 the defendant again committed an armed robbery with multiple co-conspirators in Maryland. This time being even more brazen, the defendant and his accomplices took drivers licenses to strike fear into their victims. The government would also note that although dismissed in the plea, the defendant was charged with 5 counts of retaliation involving a witness. *See* PSR ¶ 40.

### C. The Need for the Sentence Imposed

The government believes that a sentence of 63 months of incarceration, to be followed by 36 months of supervised release, is the appropriate sentence in this case.[8] A significant period of incarceration is necessary to protect the community from the defendant and will serve to send a message to the defendant that he cannot possess firearms in the future or engage in further criminal activity.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:

\_\_\_\_/s/_____
Samuel Frey
PA Bar No. 321856
Assistant United States Attorney

---

[8] Should the Court disagree with the Government's analysis and guideline calculation, the Government would request the low end of the applicable guideline range used by the Court.

District of Columbia
555 4th Street, NW
Washington, DC 20530
(202) 252-7124
samuel.frey2@usdoj.gov